# In the Court of Common Pleas of Schuylkill County.
## (*In Equity.*)

# WM. H. WITTE *v.* THE PEOPLE'S PASSENGER RAILWAY COMPANY.

Equity will not relieve against a forfeiture of stock, in an incorporated company, made in pursuance of a statute.    Equity will not aid a party guilty of laches.

**Hearing upon bill and affidavits.**

Opinion by

PERSHING, P. J.    The People's Railway Company was incorporated by act of assembly of 4th April, 1865, subject to the general railroad law, passed in 1849.    By the charter the road was required to be completed in three years.    A supplement was passed April 28th, 1871, extending the time for the making of the road, and under which a reorganization of the company took place.    Up to that time it appears nothing had been done in the actual construction of the railway.    The plaintiff was not a stockholder till after the passage of the supplemental act of 1871.    The entire list of stockholders now embraces six persons, and we have the affidavits of five of these in this case.    The plaintiff seeks by his bill to restrain the company from transferring 416 shares of the stock, and asks for an order or decree to have the same delivered to him on his paying the amount unpaid on said shares.    The plaintiff at no time has paid anything on these shares, as it appears from the evidence submitted at the hearing.

Waiving any discussion as to whether the plaintiff actually subscribed for the number of the shares of stock he claims in this company, it is established that there was an understanding between themselves that each of the six stockholders should own, by subscriptions and allotments, an equal number of the 5,000 shares, into which the stock of the company was divided.    Other undisputed facts are that the directors made an assessment of $5 per share, in cash, payable on the first day of September, 1871 ; that at that date the plaintiff was unable to pay the assessment on his stock, and that an arrangement was made by which he gave his two acceptances, or, as shown by the evidence, his promissory notes, the nature of which arrangement is best shown by the receipt given by the treasurer, as follows :

Received, Pottsville, September 2d, 1871, of William H. Witte, his two acceptances, one for two thousand and eighty-eight dollars and fifty-one cents, and the other for two thousand and ninety-three dollars and

fifty-two cents, at fifteen and thirty days respectively, which, when paid, will entitle him to have delivered to him eight hundred and thirty-three shares of stock in the People's Railway Company, with a credit of ten per cent. paid thereon.   In case default of payment of said- acceptances at maturity, then all claim in said stock will be treated as released, and in case of payment of one and not the other of said acceptances, then only a rateable proportion of said shares to be delivered to the said W. H. Witte. The said acceptances include interest thereon from date to their maturity.

$2,088.51                    [Signed.]     L. F. WHITNEY,
$2,093.52            *Treasurer People's Railway, Pottsville.*
——————
$4,182.03

It is not disputed that the acceptance at fifteen days was paid, and that on the maturity of the other, the time of its payment was extended for 30 days longer.    The plaintiff admits that he did not pay this renewed obligation.    The sufficiency of the reasons he assigns for not paying it, will be considered hereafter.

The defendants admit, as stated in the 7th paragraph of plaintiff's bill, that on the 23d day of February, 1872, the board of directors adopted a resolution directing the secretary to notify the plaintiff, that unless he paid the renewed draft within fifteen days, the 416 shares of stock· (being the same now in controversy) would be sold, and that plaintiff would be held liable for any loss or deficiency that might arise on the sale of said stock ; but defendants expressly deny that the meeting at which this resolution was adopted was not duly and legally called, and aver that the same was called in strict accordance with the by-laws of the company.    It is also admitted by the defendants, as stated in the 8th paragraph of the bill, that this stock was sold.    It appears from the evidence that this sale was made on the 15th day of May, 1872, and that the purchasers, (who are not named by defendants nor made parties by plaintiff,) had paid the assessments, with interest, up to that date.

The plaintiff avers in the 6th paragraph of his bill, that "previous to the time of the maturity of the renewed draft, he demanded the delivery to him of 417 shares of stock, being the rateable proportion for which he had paid at that time," and that the delivery was refused by the company ;. and he alleges in the 9th paragraph, that it was in consequence of this refusal that he, the plaintiff, refused to pay the said renewed draft at its maturity ; that he has at all times been, and is now ready to pay the amount of said draft, with interest, upon the receipt of said stock ; that previous to the meeting aforesaid and alleged sale, the plaintiff tendered, (and is ready to tender now,) the amount of said draft with interest, and demanded the delivery of the stock, but the defendants always refused to accept said money and deliver the said stock."

The defendants in answer, aver in their affidavits that the plaintiff was to receive 833 shares of the stock "on paying for the same as required by the board of directors ;"   and that by an agreement, to which the plaintiff was a party, no formal certificates of stock were to be issued until

the full amount which the company might require to be paid thereon, should have been paid; that upon the latter ground, plaintiff had no right to make any demand for the delivery of stock, even had he not expressly agreed not to do so. Defendants also allege that after plaintiff paid his first acceptance, he requested from L. F. Whitney, the secretary and treasurer of the company, certificates of stock on which he had paid $5 per share, and that on being reminded of the agreement that no regular certificates should issue, he, the plaintiff, agreed to receive, and did receive an informal certificate for such stock, the same as had been issued to other subscribers to the stock of the company. Defendants deny that the plaintiff refused to pay the renewed draft because of any refusal on the part of the company to deliver stock, as stated in the 6th paragraph of plaintiff's bill, and deny that plaintiff ever made any such tender as he alleges, and that he was at all times ready to pay the renewed draft. In proof of this they gave in evidence a letter of the plaintiff, dated November 2d, 1871, to L. F. Whitney, secretary, in which he states that he can not arrange for the payment of his note, due on the 5th of that month, because he had only a certificate, and not the stock itself, and proposing a further extension for 15 days, at which time he would be able to pay.

Now, looking at the facts which are admitted by both parties, has the plaintiff a valid claim to the 416 shares of stock he asks to be decreed to him? By his own agreement, as embraced in the receipt of L. F. Whitney, treasurer, dated September 2d, 1871, plaintiff was entitled to receive 833 shares of stock if he paid both acceptances; if he made default in the payment of both, all claim to the stock was relinquished; if he paid the one and not the other, then he was entitled to only a rateable proportion of said shares, and the company was released as to the balance of the 833 shares, by a fair construction of this contract. We think it also clear that no demand could legally be made after the payment of the first acceptance, for a rateable proportion of the shares of stock, till after the date of the maturity of the second acceptance, and a failure on the part of the plaintiff to pay it. The plaintiff admits he made his demand before that time, and because he failed to receive a rateable proportion of the stock, he refused to pay his renewed obligation when it fell due afterwards, viz: 2d or 5th of November, 1871. By his own act, the plaintiff lost his claim for any stock beyond that for which he now holds a certificate. The refusal of the company to comply with a demand which was made out of time, could furnish the plaintiff no excuse for the refusal to pay his renewed acceptance or note when it matured.

Was there a forfeiture of this stock under the act of 1849, to which the company was made subject? The plaintiff contends there was not, upon the grounds that the meeting of the 23d of February, 1872, at which notice was directed to be given to him, was not called in accordance with the by-laws of the company, and that he had not been in default for a period of six months, as required by the statute. The by-law provides that special meetings may be called by the directors as often as they may

deem expedient. Other special meetings are to be called by the secretary, on the request of the holders of one-tenth of the stock of the company, and in these the purpose and object of the meeting shall be stated. The defendants aver that in the meeting called for February, 23d, 1871, the by-law was strictly complied with.

A company in enforcing the payment of calls by forfeiture of the stock, must strictly pursue the mode pointed out in its charter, and the general laws of the state. This is a universal rule, which the courts will rigidly enforce. 13 Vesey 428.

In this case the second acceptance or note, as renewed, became payable on the 2d of November, 1871, or allowing the days of grace, on the 5th day of November, 1871. The sale was made of the stock on the 15th day of May, 1872, more than the required six months having elapsed since the renewed note became due, and the plaintiff was in default. We are not clear, however, that the taking of plaintiff's acceptances extended the time beyond the first day of September, 1871, from which the six months of default were to be reckoned. If this company was made up of a large company of stockholders, it might be proper to discuss the power of a board of directors to exact money in payment of assessments from the body of the stockholders, and favor others by taking their obligations and extending the payment of them from time to time. We have not met any decision on the exact point, but the general current of authority throws a strong doubt on the power of the directors of a corporation to make any discrimination between stockholders. They cannot accept from shareholders a sum of money in discharge of his liability to calls. 27 Eng. L. Eq. R. 575. Directors are agents with limited powers. All subscribers to the stock must stand on an equality. These points have been frequently decided. The discretion of the managers as to calls are modal, merely relating to the time and manner of making payments. Ger. Pass. R. W. Co. v. Fitler, 10 P. F. Smith 132. It is not necessary to pursue this question. Here the number of stockholders is limited, and the taking of plaintiff's paper and the extension of the time of payment, were done with the consent of all.

There is no provision in the charter of this company, nor in the general railroad law of 1849, which requires actual notice to a stockholder in default, before forfeiting his stock. The notice to the plaintiff of 23d February, 1871, was not necessary on the part of the company. The plaintiff, as a subscriber to the stock and a member of the corporation, must be presumed to know its terms. It is not denied that the call for the assessment was duly made, and that the plaintiff had personal knowledge of it; and it is clear that six months had elapsed after his default before the stock was forfeited and sold to other parties. He has no right to any other or further notice. Ger. Pass. R. W. Co. v. Fitler, 10 P. F. Smith 130. That equity will not relieve against such a forfeiture, has been a settled doctrine of the court ever since Sparks v. The Liverpool Water Works, 13 Ves. 438. At the expiration of six months, the time limited

in the charter, the power of the managers to forfeit the stock was perfect, and the defaulting stockholder could claim no further delay or any other notice than he had already received. Ger. Pass. R. W. Co. *v.* Fitler, *supra.* Nor is it necessary that the sale should be a public one, for, as it is held, the defaulting stockholder by the forfeit, is relieved from future liability, and is not entitled to any surplus accruing from the sale. Ang. & Ames § 551.

There is another reason for dissolving the injunction granted on the filing of the bill in this case: All the equities of plaintiff's case are denied. That no injunction can issue or be continued where the equities of complainant's case are denied, is a proposition too well fortified by reason and authority to be successfully attacked. Claplian *v.* White, 8 Ves. 35. Affidavits entirely responsive to a bill, must dissolve the injunction if granted, if they deny materially every fact alleged, though not with the particularity required in an answer. It is the universal practice to dissolve an injunction on an affidavit denying the facts and equity upon which it has been granted. Carpenter *v.* Burden, 2 Pars. 24, cited in Dull *v.* Holl, 1 Phila. R. 258.

And as a final reason for our present action, the plaintiff, if he at any time had a claim to this stock, has lost it by his own neglect to assert his right at the proper time. The action of the board of directors on February 23d, 1872, gave him notice of the contemplated action of the company. He made no effort to prevent the sale, nor has he taken any step since, till the filing of this bill, more than a year after the sale of the stock. When the first assessment was made in 1871, the company had neither road nor cars, and the stock was of no marketable value. Since then the road has been constructed and put into operation. That the stock is increasing in value, is asserted by both parties. The plaintiff now comes forward and claims 416 shares of the stock, upon which he has heretofore paid nothing, and asserts his willingness "to pay the amount unpaid on them," including, we suppose, the two additional assessments made by the directors since the one which was made payable on September 1st, 1871. The case of the Germantown Pass. R. W. Co. *v.* Fitler, 10 P. F. Smith 124, is similar to this one in many of its features, and we cannot do better than quote the conclusion of the opinion of Judge Strong in that case : "It would be a strange equity thus to allow a party to speculate upon contingencies. The forfeiture relieved him from all the obligations of his subscription. The company could not have pretended to enforce those obligations. Thus he alone would be allowed to play fast or loose. Equity aids the vigilant and active, not the sleeping and indolent. Nothing, in the language of Lord Camden, can call forth this court into activity but conscience, good faith and reasonable diligence. When these are wanting, the court is passive and does nothing. Smith *v.* Clay, 3 Bro. C. C. 639, note." The preliminary injunction is dissolved.

*Geo. R. Kaercher* and *Chas. W. Wells,* Esqrs., for plaintiff ; *Hughes & Farquhar* and *Lin Bartholomew,* Esqrs., for defendants.